FORD, ETC. *v.* COMMERCIAL SECURITIES CO., INC.

Feb. 22, 1954

No. 39065          54 Adv. S. 9          70 So. 2d 525

*John W. Prewitt,* Vicksburg, for appellant.

*Young & Daniel,* Jackson; *Teller & Biedenharn,* Vicksburg, for appellee.

ETHRIDGE, J.

■■ ■ The principal question on this appeal is whether there is substantial evidence in the record to support the finding and decree of the Chancery Court of Warren County, that appellant Ford, defendant below, was during the times in question a partner of or joint venturer with E. G. Clarke in an unincorporated used car business in Vicksburg known as the Mississippi Motor Company; or conversely, whether on this rather lengthy record we should say that the trial court was manifestly wrong in that finding. If Ford was a partner or joint venturer with Clarke in Mississippi Motor Company, then he is liable on the conditional sales contracts which were assigned with recourse by Mississippi Motor Company to appellee-complainant, Commercial Securities Company, Inc.

The chancery court found that the appellant was liable on these instruments, and the record is ample to support that decision. A detailed narrative of the facts will serve no purpose. Ford in the early 1940's had operated a used car business in Vicksburg, known as Mississippi Motor Company. He stated that he terminated it around 1944. He and Clarke were close friends, and Clarke worked for Ford in the latter's Safeway Cab Company until Clarke left that business in 1951. A used car lot known as the Mississippi Motor Company was then opened by Clarke and, according to appellee's evidence, by Ford. The evidence warranted a finding that Ford furnished the financial backing for this venture. He prepared and gave to appellee a statement of his financial worth, and appellee's witnesses testified that appellee purchased the contracts in question on the strength of this statement and of Ford's participation in and ownership of the Mississippi Motor

Company. Moreover, on October 6, 1951, in response to appellee's complaint to Ford that Clarke was signing most of the endorsements and assignments of Mississippi Motor Company contracts, Ford gave the following letter to appellee: "From this date forward till further notice by me, you are hereby authorized to accept the signatures of E. G. Clarke for sales-contracts & floor planning of cars for the Miss. Motor Co., Vicksburg, Miss."

It is apparent that this authorization applied to both conditional sale contracts and to floor-plan or wholesale contracts.

Appellant admitted selling certain automobiles through the Mississippi Motor Company, although he claimed that they were personal sales and not connected with the company. He admitted signing the name "Mississippi Motor Company by Jack E. Ford" on contracts and notes negotiated to appellee, including conditional sale contracts. Appellant admitted that he was responsible for the floor-planning or wholesale financing for Mississippi Motor Company. His contention is that his liability was so limited, and did not extend to retail, conditional sale contracts. Appellant admitted that he signed a signature card for a bank opening a checking account in the name of Mississippi Motor Company, with both him and Clarke being authorized to draw against the account; and that both he and Clarke signed a form for the bank entitled "authority of partnership to open deposit account, and to procure loans." Appellant admitted that he endorsed several checks payable to Mississippi Motor Company, endorsing them in the name of the company by himself. Appellant paid off several obligations of Mississippi Motor Company. Bradshaw, manager of appellee's office in Jackson, testified that Ford told him on one occasion that the Mississippi Motor Company "was getting along pretty good, that recently he and Clarke split $5,000 out of the company." Lowry, assistant manager of appellee's Jackson office, testified that appellant told him that Clarke

was the manager of appellant's used car business, and that appellant introduced Clarke to him by so stating. Clarke died prior to the filing of this suit.

The trial court was warranted in accepting this testimony and this uncontradicted documentary evidence, and in finding that Ford was either a partner of or joint venturer with Clarke in the Mississippi Motor Company. Under either status appellant would be liable on the conditional sale contracts, but since a joint venture relates to a single transaction of a limited nature, and a partnership relates to a joint and continuing business of a particular kind, we think that the record indicates that appellant and Clarke were partners in the Mississippi Motor Company. 40 Am. Jur., Partnership, Section 3.

The total amount of the final decree for appellee against appellant was $17,747.37. One of the items which appellee claimed appellant owed was a check in the amount of $1,202.83, dated April 24, 1952, payable to appellee and signed by E. G. Clarke for a 1947 Ford and a 1946 Chevrolet, and for an obligation of Mississippi Motor Company. This check was returned to appellee marked "account closed", but prior to its dishonor appellee had surrendered to appellant the notes and contracts in question. Bradshaw testified that the check was given in payment for the floor-planning of the two cars. He admitted that appellee had repossessed these two cars and that they were sold by appellee. He stated that this suit was filed for the deficiency above what the cars were sold for; that these cars were sold along with others which appellee had replevied from Ford, and that applying the pro rata share received for these two cars, the amount of this check had not been paid by "a big majority." There is no testimony as to the amount of the deficiency, if any, owed on this check above the amount received by appellee for the sale of the two cars which it had repossessed. Hence it is undisputed that the two cars

constituting collateral for the debt represented by this check were repossessed by the payee, appellee, and were later sold to liquidate the debt represented by the check. Appellee had the burden of showing the amount, if any, still owed for the debt represented by the check, and it failed to meet that burden of proof. Appellee in its brief in effect recognized the weakness of the proof on this issue and agreed, if the court should so decide, to a remittitur for the amount of the check, $1,202.83. The final decree of the trial court should be reduced in that amount, and a judgment entered here for the difference, $16,544.54. The decree of the trial court is affirmed as so modified.

About two and a half months after the final decree on January 21, 1953, appellant filed a "petition for bill of review." That petition charged that appellant had obtained newly discovered evidence which would show that the findings of the final decree on several of the conditional sale contracts were wrong, and that in fact appellee had been paid on some of these instruments. It further charged in general terms that appellee had fraudulently procured the decree by withholding information concerning these contracts. Hence the "petition for bill of review" asked that the court declare void its original decree and that the case be tried de novo. Appellee moved to strike the petition, and the trial court sustained that motion. We find no error in that action under the circumstances in this case. ■■ A bill of review is not favored in equity, especially on the grounds of newly discovered evidence. It is within the sound discretion of the trial court, and the granting of such relief should be cautiously exercised. Griffith, Mississippi Chancery Practice, Section 640. ■■ Much of the newly discovered evidence charged in the petition was cumulative in nature, and much of it was directed to impeaching the testimony of appellee's witnesses. It is established that a bill of review does not lie for those purposes, Griffith, Mississippi Chancery Practice,

Section 637. ██ ██ The petition did not have attached to it the affidavits of witnesses, nor the affidavits of appellant and his attorney reflecting that they had previously shown due diligence in ascertaining the facts of their case prior to the trial on the merits. The bill was filed in August 1952, and the trial was not held until January 1953, with a final decree on January 21. Moreover, in those nearly five months preceding the trial appellant did not ask for any discovery from appellee. We do not think that the trial court abused its discretion in finding in effect that appellant had not exercised due diligence. A somewhat analogous case is Williams v. Williams, 176 Miss. 251, 169 So. 27 (1936). As to the amount owed for floor-planning of cars, appellant and appellee agreed and stipulated prior to the final decree as to that amount, and the decree so adjudicated. The allegations of fraud were in general terms, and under the circumstances of this case are insufficient in law to justify the relief prayed for. Griffith, Mississippi Chancery Practice, Section 176.

Affirmed as modified.

All justices concur.

---

### ON MOTION TO CORRECT JUDGMENT

May 10, 1954          64 Adv. S. 12          72 So. 2d 201

ETHRIDGE, J.

Appellee, Commercial Securities Company, Inc., has filed a motion to correct the judgment herein in two respects. In the chancery court appellee obtained a decree against appellant for $17,747.37. On appeal we affirmed that decree subject to an agreed remittitur from that principal amount of $1,202.83, thus affirming the decree for appellee against appellant for $16,544.54. The first point of appellee's motion is that the court should make an equitable, pro rata assessment of costs

against the appellant. The costs were assessed against appellee in our original judgment. Since the decree of the trial court was affirmed as to a substantial part of it, appellee's motion in this respect is sustained, and the costs are directed to be assessed equally against appellant and appellee.

Appellee's motion also requests that appellant be assessed with five per cent damages under Code of 1942, Section 1971. However, no statutory damages are allowable upon the reversal and entry of a modified judgment or decree. Damages are assessed only where there is an unconditional affirmance. And it has been said that the ordering of a remittitur is in practical effect a reversal. Howie v. Bonds, 87 Miss. 698, 40 So. 227 (1905); Courtney Brothers v. John Deere Plow Company, 122 Miss. 611, 84 So. 690 (1920); Vicksburg S. & P. Railroad Co. v. Lawrence, 78 Miss. 86, 28 So. 826 (1900). Hence the motion to correct judgment is overruled in part, insofar as it is directed to an assessment of five per cent damages.

Motion to correct judgment sustained in part and overruled in part.

All justices concur.